## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.

AHMED RAHUMA

    Plaintiff,

  v.

SCHLUMBERGER TECHNOLOGY CORPORATION,

    Defendant.

---

## COMPLAINT AND JURY DEMAND

---

Plaintiff, Ahmed Rahuma, by and through his attorneys, HKM Employment Attorneys, LLP, for his Complaint against Schlumberger Technology Corporation ("Defendant" or the "Company") states and alleges as follows:

## INTRODUCTION

1. Plaintiff, Ahmed Rahuma, a devoted Muslim, is the son of Libyan immigrants who came to this country in search of a better life.

2. In an attempt to pursue the American Dream, Mr. Rahuma obtained his Bachelor's and Master's degrees in Mechanical Engineering and went on to work for some of the world's most prestigious oil firms, including but not limited to Weatherford International and Haliburton.

3. Despite his best efforts, however, Mr. Rahuma could not escape being exposed to the racial, ethnic, and religious discrimination which has long plagued this nation's workplaces. *See Babrocky v. Jewel Food Co.*, 773 F.2d 857, 863 (7th Cir. 1985) ("Title VII […] is a remedial

1

statute, intended to rectify a long history of discrimination.").

4.  From having his accent disparagingly mocked on a regular basis, to being compared to ISIS terrorists, to having some of his most holy and sacred religious rituals derided, Mr. Rahuma was exposed to employment practices—engaged in by his direct supervisor—that permeated the workplace with discriminatory intimidation, ridicule, and insult.

5.  Not only was Mr. Rahuma harassed, but Defendant went so far as to demand that Mr. Rahuma change his sincerely held religious beliefs, specifically those concerning his refusal to drink or be present around alcohol. When Mr. Rahuma refused to do so, Defendant further discriminated and/or retaliated against him by intentionally forcing him to smell alcohol while at a work-related lunch, reassigning his clients to other similarly situated white, non-Muslim co-workers, and ultimately terminating his employment because of these cultural and/or religious "differences."

6.  This degrading and humiliating discriminatory conduct not only cost Mr. Rahuma his job, but more importantly, robbed him of his dignity—the very dignity that our anti-discrimination laws are intended to protect. *See King v. Hillen*, 21 F.3d 1572, 1582 (Fed. Cir. 1994) ("The purpose of Title VII is [...] through law to liberate the workplace from the demeaning influence of discrimination, and thereby to implement the goals of human dignity and economic equality in employment.").

7.  As noted by Congress when enacting the Civil Rights Act of 1964, from which Title VII was initially conceived, discrimination is simply incompatible "with [the] ideals and principles to which this country is dedicated." H.R. REP. NO. 914 at 16.

8.  To ensure that this nation fulfills these noble ideas and principles, and to guarantee

that it remains the beacon of freedom that Mr. Rahuma's parents sought when they first immigrated here over 40 years ago, Mr. Rahuma now seeks redress under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981. *See Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 45 (1974) ("the private right of action remains an essential means of obtaining judicial enforcement of Title VII […] In such cases, the private litigant not only redresses his own injury but also vindicates the important congressional policy against discriminatory employment practices").

## PARTIES

9.      Plaintiff, Ahmed Rahuma, was and is a resident of Colorado at all times relevant to this Complaint.

10.     Defendant, Schlumberger Technology Corporation, is a foreign corporation registered in Texas that conducts substantial business within Colorado as an oilfield services company. Defendant's registered agent in Colorado is Capitol Corporate Services, Inc., which is located at 36 South 18th Avenue, Ste D., Brighton, CO 80601. At all relevant times, Defendant has operating out of the physical address of 1675 Broadway Ste 900, Denver, CO 80202.

## JURISDICTION AND VENUE

11.     Plaintiff incorporates by reference the above paragraphs as though set forth fully and separately herein.

12.     This Court has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 as the claims he is bringing arise under federal law.

13.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the conduct alleged to be unlawful occurred in this District.

**ADMINISTRATIVE REMEDIES HAVE BEEN EXHAUSTED**

14.     Plaintiff incorporates by reference the above paragraphs as though set forth fully and separately herein.

15.     Plaintiff filed his Charge of Discrimination, Charge Number 541-2019-03266, with the Equal Employment Opportunity Commission ("EEOC") for racial discrimination, religious discrimination, national origin discrimination, and retaliation on September 4, 2019. Plaintiff was issued a Right to Sue with respect to the above charge number on or about January 22, 2021 and filed the present action within ninety (90) days of receipt of the same.

**FACTUAL ALLEGATIONS**

16.     Plaintiff incorporates by reference the above paragraphs as though set forth fully and separately herein.

17.     With a Master's Degree in Mechanical Engineering and with over eleven (11) years of relevant experience in the oil & gas industry, Defendant hired Plaintiff in January 2018 to serve as a Sales Engineer for its North American land-based services brand, OneStim.  More specifically, Plaintiff was assigned to Defendant's buying center in Denver, Colorado.

18.     When Plaintiff began his employment with Defendant in January of 2018, he reported to Sales Manager Jodi Wood.

19.     While reporting to Ms. Wood, Plaintiff was treated fairly, equitably, and in a non-discriminatory manner.

20.     Moreover, Plaintiff successfully performed the tasks and duties associated with his employment.

21.     This was best exemplified by the 9-million-dollar contract that Plaintiff was able to

secure with Ultra Petroleum—a major contract that Ms. Wood praised Plaintiff for obtaining.

22.     In August of 2018, however, Ms. Wood left her position in Denver and was replaced by Kevin Blankenburg, a Caucasian male that actively practices the Christian faith.

23.     In mid to late August of 2018, shortly after Mr. Blankenburg assumed the role of Sales Manager and Plaintiff's direct supervisor, Plaintiff requested that he be provided with a day off to celebrate the Muslim holy day of Eid al-Adha—which Muslims are not supposed to work on—and to perform the requisite prayers.

24.     Despite the fact that Plaintiff provided Mr. Blankenburg with ample notice of his intent to take the day off of work, Mr. Blankenburg immediately rejected Plaintiff's reasonable request, citing the fact that Plaintiff needed to attend a workshop and noting that while he did not want Plaintiff to go to hell, he himself had been required to miss church on Sundays to attend to work-related matters on certain occasions.

25.     Upon information and belief, attendance at the workshop was not essential or necessary for Plaintiff to be able to perform his job, and Plaintiff's absence from the workshop would not have imposed any undue hardship on Defendant.

26.     Fearful of being disciplined and/or terminated from his position with Defendant, Plaintiff attended work on the holy day of Eid al-Adha to participate in the aforementioned workshop, thereby violating some of the most sacred tenets of his faith.

27.     While at the workshop, and within Plaintiff's presence, Mr. Blankenburg began speaking to another Caucasian, non-Muslim employee about Mutiara—another Muslim employee—disparaging her decision to participate holy practice of making a pilgrimage to the Mecca, which Muslims are required to make at least once in their lifetime.

28.     More specifically, Mr. Blankenburg began disparaging the practice of praying and/or circling around the Kaaba, openly laughing at this important practice. When Mr. Blankenburg noticed Plaintiff's presence, he pointedly and disapprovingly asked Plaintiff: "that's what you do as a Muslim, right?"

29.     Shortly thereafter, Mr. Blankenburg began openly mocking Plaintiff's accent, repeatedly correcting Plaintiff's pronunciation despite being able to understand what Plaintiff was saying and despite the fact that such alleged mispronunciation had no impact on Plaintiff's ability to conduct his work.

30.      On certain occasions, Mr. Blankenburg would even laugh at Plaintiff's accent in the presence of other employees, falsely complaining that he could not understand what Plaintiff was saying. Mr. Blankenburg would continue to harass Plaintiff about his accent at least once a week until his termination in April of 2019.

31.     In September and/or October of 2018, Defendant held two non-mandatory social events, which Plaintiff declined to attend because he was informed that alcohol was going to be consumed.

32.     As a devout Muslim, and in accordance with his religious beliefs, Plaintiff is not allowed to consume and/or be in the presence of alcohol.

33.     After declining to come to the second event—which was held at a bar—Mr. Blankenburg confronted Plaintiff in an attempt to pressure him to attend these non-mandatory events.

34.      Despite explaining to Mr. Blankenburg that his religion precluded him from being in the presence of alcohol, Mr. Blankenburg continued to exert pressure on Plaintiff.

35.     At one point, Mr. Blankenburg explained that he had read the "whole Bible" and could not recall there being any prohibition on being in the presence of and/or consuming alcohol, thereby questioning the sincerity of Plaintiff's religious beliefs. In response, Plaintiff explained that the Qur'an—Muslims' holy book—is different and distinct from the Bible, but Mr. Blankenburg refused to accept this widely known fact, insisting that they were the same.

36.     As this harassment persisted, Plaintiff was subjected to increasingly adverse employment actions.

37.     For example, as of September of 2018, Plaintiff had been assigned the worst active accounts—a decision that effected his ability to generate and/or increase his income.

38.     Accordingly, when one of Plaintiff's fellow Sales Engineers, Tien Do, quit in September of 2018, Plaintiff expected that he was going to be given at least some of Ms. Do's accounts to balance the glaring disparity between Plaintiff and the other Sales Engineers.

39.     Without discussing how Ms. Do's accounts were going to be reassigned, Mr. Blankenburg unilaterally decided to reassign these accounts to Chevre Meyer, Gordon Lutken, and Ashley Watling—all of whom are Caucasian and practice the Christian faith.

40.     Upon information and belief, Mr. Blankenburg intentionally refused to reassign any of Ms. Do's accounts to Plaintiff because of his race, national origin, and/or religion.

41.     Similarly, between September and December of 2018, Mr. Blankenburg unjustifiably reassigned a substantial portion of Plaintiff's active accounts to other Caucasian, non-Muslim, Sales Engineers.

42.     Upon information and belief, Mr. Blankenburg reassigned these accounts to other Sales Engineers because of Plaintiff's race, national origin, and/or religion.

43.     On January 10, 2019, Mr. Blankenburg intensified his harassment of Plaintiff while they were out to lunch with a client.

44.     At this lunch, Mr. Blankenburg intentionally placed alcohol under Plaintiff's nose and demanded that he smelled it, despite knowing that his religious belief prevented him from being in the presence of and/or consuming alcohol, in an effort to further harass and humiliate Plaintiff.

45.     Additionally, Mr. Blankenburg began making comments indicating that he associated the Muslim faith with the terrorist group, ISIS, and that Plaintiff, unlike him, would not be going to heaven after his death.

46.     Around this very same time, Mr. Blankenburg denied Plaintiff's request to attend a work-related training, but nevertheless provided Plaintiff's similarly situated Caucasian, non-Muslim colleague with permission to attend the very same training.

47.     No legitimate reason was ever provided for this disparate treatment, which further evidenced Mr. Blankenburg's discriminatory animus.

48.     When Mr. Blankenburg provided Plaintiff with his performance evaluation in February of 2019, he indicated that Plaintiff was performing his job well but that he had concerns about some of the "cultural differences" associated with Plaintiff, including but not limited to his inability to consume and/or be in the presence of alcohol.

49.     In fact, Mr. Blankenburg went so far as to demand that Plaintiff "reevaluate" these religious beliefs and indicated that he would have to transfer Plaintiff into a new position if he was not willing to make such changes.

50.     In April of 2019, despite receiving positive performance reviews and having never

been formally disciplined by Defendant, Mr. Blankenburg abruptly informed Plaintiff that his employment with Defendant was being terminated.

51.     While Defendant claims that Plaintiff was terminated as part of a reduction in force, Plaintiff was the *only* Sales Engineer that was terminated at this time.

**FIRST CLAIM FOR RELIEF**
**(Hostile Work Environment Based on Race, National Origin, and/or Religion in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*)**

52.     Plaintiff incorporates by reference the above paragraphs as though set forth fully and separately herein.

53.     At all times relevant to this Complaint, Plaintiff was an "employee" as defined in 42 U.S.C. § 2000e(f).

54.     At all times relevant to this Complaint, Defendant was an "employer" as defined in 42 U.S.C. § 2000e(b).

55.     Title VII makes it "an unlawful employment practice for an employer [...] to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of an individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e—2(a)(1).

56.     The phrase "terms, conditions, or privileges of employment," embedded within the text of Title VII, has been interpreted to prohibit employers from subjecting their employees to a discriminatorily hostile or abusive work environment. *See Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993).

57.     For a hostile work environment claim to exist, the workplace must be permeated with "discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to

9

alter the conditions of the victim's employment and create and abusive working environment." *Id.*

58.     Here, Defendant, by and through Mr. Blankenburg, engaged in frequent and severe harassment of, and disparate treatment toward Plaintiff because of his race (African American), national origin (Libyan), and/or religion (Muslim).

59.     Defendant's harassment and disparate treatment of Plaintiff, which occurred dozens of times in the nine (9) month period that he reported to Mr. Blankenburg, resulted in adverse impacts to the terms and conditions of Plaintiff's employment.

60.     Defendant's conduct was sufficiently severe and/or pervasive that a reasonable person in Plaintiff's position would have found his work environment to be hostile and/or abusive. Moreover, Plaintiff subjectively perceived his work environment to be abusive and hostile, as he believed the conditions he was forced to endure were intolerable and humiliating.

61.     The unlawful employment practices complained of above were intentional and were committed with malice or with reckless indifference to Plaintiff's federally protected rights.

62.     As a direct and proximate result of Defendant's acts and/or omissions, Plaintiff has suffered loss of income, emotional pain and suffering, embarrassment and inconvenience, thereby entitling him to general and special damages, economic damages, and attorneys' fees and costs.

**SECOND CLAIM FOR RELIEF**
**(Disparate Treatment Based on Race, National Origin, and/or Religion in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*)**

63.     Plaintiff incorporates by reference the above paragraphs as though set forth fully and separately herein.

64.     At all times relevant to this Complaint, Plaintiff was an "employee" as defined in 42 U.S.C. § 2000e(f).

65.     At all times relevant to this Complaint, Defendant was an "employer" as defined in 42 U.S.C. § 2000e(b).

66.     Defendant treated Plaintiff less favorably than his similarly situated Caucasian, non-Muslim co-workers.

67.     Defendant subjected Plaintiff to adverse treatment, including but not limited to being required to work in a hostile work environment which materially and adversely affected the terms and conditions of his employment; having his accounts reassigned to similarly situated Caucasian, non-Muslim employees; being denied the ability to attend a training that one of his similarly situated Caucasian, non-Muslim co-workers was allowed to attend; being denied reasonable religious accommodations granted to similarly situated Caucasian, non-Muslim employees; and terminating his employment while retaining less qualified Caucasian, non-Muslim employees.

68.     As a direct and/or proximate result of Plaintiff's race, national origin, and/or religion, Defendant denied him benefits, treated him less favorably than similarly situated Caucasian, non-Muslim employees, and terminated his employment.

69.     The unlawful employment practices complained of above were intentional and were committed with malice or with reckless indifference to Plaintiff's federally protected rights.

## THIRD CLAIM FOR RELIEF
### (Hostile Work Environment Because of Race, Ancestry, Ethnicity, and/or Ethnic Traits in violation of 42 U.S.C. § 1981)

70.     Plaintiff incorporates by reference the above paragraphs as though set forth fully and separately herein.

71.     42 U.S.C. § 1981 prohibits discrimination in the making and enforcement of

contracts and is designed to provide a remedy against discrimination in employment on the basis

of race, ancestry, and/or ethnic traits.

72.     42 U.S.C. § 1981 authorizes a plaintiff to bring a claim for hostile work

environment under the same substantive standard applicable to such claims brought under Title

VII. *See Lounds v. Lincare, Inc.*, 812 F.3d 1208, 1221 (10th Cir. 2015).

73.     In January of 2018, Defendant entered into a contract with Plaintiff that is subject

to 42 U.S.C. § 1981.

74.     For a hostile work environment claim to exist, the workplace must be permeated

with "discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to

alter the conditions of the victim's employment and create an abusive working environment."

*Harris.*, 510 U.S. at 21.

75.     Here, Defendant, by and through Mr. Blankenburg, engaged in frequent and severe

harassment of, and disparate treatment toward, Plaintiff because of his race, ancestry, ethnicity

and/or ethnic traits.

76.     Defendant's harassment and disparate treatment of Plaintiff, which occurred

dozens of times in the nine (9) month period that he reported to Mr. Blankenburg, resulted in

adverse impacts to the terms and conditions of Plaintiff's employment.

77.     Defendant's conduct was sufficiently severe and/or pervasive that a reasonable

person in Plaintiff's position would have found his work environment to be hostile and/or abusive.

Moreover, Plaintiff subjectively perceived his work environment to be abusive and hostile, as he

believed the conditions he was forced to endure were intolerable and humiliating.

78.     The unlawful employment practices complained of above were intentional, and

were committed with malice or with reckless indifference to Plaintiff's federally protected rights.

79.     As a direct and proximate result of Defendant's acts and/or omissions, Plaintiff has suffered loss of income, emotional pain and suffering, embarrassment, and inconvenience, thereby entitling him to general and special damages, economic damages, and attorneys' fees and costs.

**FOURTH CLAIM FOR RELIEF**
**(Disparate Treatment Because of Race. Ancestry, Ethnicity, and/or Ethnic Traits in violation of 42 U.S.C. § 1981)**

80.     Plaintiff incorporates by reference the above paragraphs as though set forth fully and separately herein.

81.     42 U.S.C. § 1981 prohibits discrimination in the making and enforcement of contracts and is designed to provide a remedy against discrimination in employment on the basis of race, ancestry, ethnicity and/or ethnic traits.

82.     Defendant treated Plaintiff less favorably than his similarly situated Caucasian, non-Muslim, and non-Libyan co-workers.

83.     Defendant subjected Plaintiff to adverse treatment, including but not limited to being required to work in a hostile work environment which materially and adversely affected the terms and conditions of his employment; having his accounts reassigned to similarly situated Caucasian, non-Muslim, and non-Libyan employees; being denied the ability to attend a training that one of his similarly situated Caucasian, non-Muslim, and non-Libyan co-workers was allowed to attend; being denied reasonable religious accommodations granted to similarly situated Caucasian, non-Muslim employees, and non-Libyan employees; and terminating his employment while retaining less qualified Caucasian, non-Muslim, and non-Libyan employees.

84.     As a direct and/or proximate result of Plaintiff's race, ancestry, ethnicity, and/or

ethnic traits, Defendant denied him benefits, treated him less favorably than similarly situated Caucasian, non-Muslim employees, and non-Libyan employees, and terminated his employment.

85.     The unlawful employment practices complained of above were intentional and were committed with malice or with reckless indifference to Plaintiff's federally protected rights.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor against Defendant and order the following relief as allowed by law:

A.     Compensatory damages, including but not limited to those for past and future pecuniary and non-pecuniary losses, garden-variety emotional distress, pain, inconvenience, mental anguish, and loss of enjoyment of life;

B.     Punitive damages for all claims as allowed by law;

C.     Attorneys' fees and costs of this action;

D.     Pre-judgment and post-judgment interest at the highest lawful rate; and

E.     Such further relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff requests a trial by jury.

Respectfully submitted this 20th day of April, 2021

**HKM EMPLOYMENT ATTORNEYS LLP**

By: *s/Julian G.G. Wolfson*
        Claire E. Hunter
        Julian G.G. Wolfson
        HKM Employment Attorneys LLP
        730 17th Street, Suite 750

14

Denver, Colorado 80202
chunter@hkm.com
jwolfson@hkm.com
*Attorneys for Plaintiff Ahmed Rahuma*